[No. 11537. Department One. August 11, 1914.]

J. E. WOODARD, *Respondent*, v. CLINE LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—FACTORY ACT—PLEADING—COMPLAINT—SUFFICIENCY. In an action by a shingle sawyer, brought under the factory act, for injuries sustained through coming in contact with the jointer saw while adjusting a set screw which controlled the tipper table, the complaint is not defective in that it fails to allege any duty to be performed that would make an injury probable, or that the employee was liable to come in contact with the unguarded saw, where it alleged that "it was one of the duties of the plaintiff to adjust said tipper table to said shingle saw for it to properly perform its work," etc., followed by facts showing the duty to be performed, and that plaintiff was "liable to come in contact" with the edge of the saw while adjusting the set screw which controlled the tipper table.

APPEAL—REVIEW—VERDICT. A finding by the jury on conflicting evidence that the plaintiff was in the employ of defendant at the time of an accident, will not be disturbed on appeal.

MASTER AND SERVANT—INJURY TO SERVANT—UNGUARDED SAW—SCOPE OF EMPLOYMENT. The claim that plaintiff, a shingle sawyer, who, during the noon hour, placed a new block upon the tipper table, was acting without the scope of his employment, is immaterial in an action for injuries sustained by him through contact with the saw while adjusting a set screw controlling the tipper table after such repairs were made, there being abundant evidence to show that, had the repairs been made by the millwright employed to make needed repairs, the adjustment would have been necessary by the sawyer after the machine was set in motion.

[1]Reported in 142 Pac. 475.

SAME—METHODS OF WORK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. A shingle sawyer is not guilty of contributory negligence, as a matter of law, in attempting to adjust a set screw controlling the tipper table while the machine was in motion, where the evidence was in conflict concerning the location of the set screw with reference to the jointer saw upon which he was injured, and the consequent necessity for a guard, and witnesses testified that the manner in which he attempted to make the adjustment was customary and proper.

APPEAL—HARMLESS ERROR—INSTRUCTIONS. Error cannot be assigned on the refusal to give instructions covered in the general charge.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $5,000 for personal injuries is not excessive where plaintiff, a skilled shingle sawyer, twenty-nine years of age, and capable of earning from $3.25 to $4.50 per day, sustained the loss of the fingers of his left hand, which will interfere with the pursuit of his former calling, or any other requiring physical labor with his hands, and the evidence shows that he had not the education or qualifications for employment not involving physical labor.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. A new trial will not be granted for newly discovered evidence which, if given, would only be cumulative, and there was no sufficient showing of diligence to secure the same prior to the close of the trial.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered January 24, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a sawyer in a shingle mill. Affirmed.

*Craven & Greene*, for appellant.

*J. B. Abrams* and *Romaine & Abrams*, for respondent.

MAIN, J.—This action was brought under what is known as the "Factory Act," for the purpose of recovering damages on account of personal injuries alleged to be due to the negligence of the defendant. The cause was tried to the court sitting with a jury. A verdict was returned in favor of the plaintiff in the sum of $5,892.80. A motion for judgment notwithstanding the verdict was interposed and

denied.   Upon considering the motion for a new trial, the court entered an order granting a new trial, unless the plaintiff elected to accept a judgment for $5,000.   The verdict as reduced was accepted by the plaintiff.   From the judgment entered for this amount, the defendant appeals.

The Cline Lumber Company, a corporation, was the owner of a shingle mill, located at Sumas, Washington, and one Horace Cline was its manager.   In this mill, were operated five shingle saws, one of which was designated, "No. 3." The room in which these saws were located was adjacent to the room occupied by the filer.

For some days prior to the 27th day of March, 1911, one L. D. Smith had been the operator of saw No. 3.   This machine, like other shingle saws, had two saws, one known as the "shingle saw," and the other as the "jointer saw." These saws were supported by a frame, and were at right angles to each other.   Between the edge of the jointer saw and the side of the shingle saw, was what is known as the tipper-table.   The purpose of this was to catch the shingles as they dropped from the block.   The operator stood in front of the jointer saw.   Between him and this saw, was what is known as the "knee-board" or "gate."   This knee-board was of dimensions approximately corresponding to the diameter of the jointer saw, and was for the purpose of protecting the operator from injury by the saw.   At the left of the operator, and near the end of the knee-board, was a bolt within a wire spring.   This bolt regulated the contact of the tipper-table with the side of the shingle saw. The tension of the spring was released or increased by turning the burr on the end of the bolt.

Smith, who had been operating this saw, desiring to be away for a few days, brought the respondent to the mill on the morning of the 27th day of March, 1911, to operate saw No. 3 during his absence.   When they came to the mill on this morning, just prior to the starting thereof, they met the filer.   The plaintiff, when asked what purpose he had in

being there, said that he came to work a few days if there was no objection. Whereupon the filer responded, in effect, that he had no objection. Saw No. 3 on this day was operated until the noon hour by the plaintiff. After eating his lunch, the plaintiff placed upon the tipper-table a new block, which he made from a piece of an old box taken from the filer's room. After the mill started and the machine was thrown into gear, the friction of the tipper-table with the shingle saw caused a roaring sound, which indicated that the contact was too close. The plaintiff, without stopping the machine, attempted to adjust this by turning the burr upon the bolt, and thus release the tension of the spring which regulated the contact of the tipper-table with the saw. In doing this, he grasped the tipper-table with his right hand and reached under his right arm with his left hand, grasped the burr, and gave it a turn to the right. As he did so his hand came in contact with the edge of the jointer saw, and he suffered the injury for which he complains.

According to the evidence on behalf of the plaintiff, the edge of the jointer saw ran within approximately one inch of the bolt. The burr was back of the knee-board. According to the evidence introduced on behalf of the defendant, the edge of the jointer saw was two inches or more from the bolt and the burr was on the outside, or flush with the outside of the knee-board. The defect complained of was the failure to have a guard between the edge of the jointer saw and the bolt and burr. If the burr upon the bolt was on the outside, or flush with the outside of the knee-board, it is obvious that no guard would be necessary, as the knee-board would operate as a guard. But if the burr was back of the knee-board, as claimed by the plaintiff, and the edge of the saw ran within one inch of the bolt, a guard was necessary to protect the operator from injury when attempting to adjust the tipper-table.

By reason of the injury, the plaintiff sustained the loss of his first finger at the knuckle-joint, leaving no stub or stump.  Of the other three fingers, there were stubs remaining varying approximately from one-half of an inch to one inch in length.  Other facts will be stated in connection with the consideration of the points to which they may be germane.

After the jury had been impaneled to try the cause and the first witness on behalf of the respondent sworn, the appellant interposed an objection to the introduction of any evidence on the ground that the complaint did not state facts sufficient to constitute a cause of action.  The appellant claimed that the complaint did not allege either any duty to be performed by the employee that would make an injury probable, or that the employee was liable to come in contact with the unguarded saw.  Paragraph four of the complaint alleges that, "it was one of the duties of the plaintiff to adjust said tipper-table to said shingle saw for it to properly perform its work in connection with the shingle saw in the defendant's said mill."  This was followed by facts which show the duty to be performed.  The complaint also alleged facts which showed that the operator of machine No. 3 was "liable to come in contact" with the edge of the jointer saw while adjusting the set screw which controlled the tipper-table.  The facts stated in the complaint constituted a cause of action under the factory act.  Rem. & Bal. Code, §§ 6587-6595 (P. C. 291 §§ 61-73).

One of the questions in the case is whether the respondent was in the employ of the appellant at the time of the accident.  Prior to beginning work, he had had no conversation with any one except the filer, and the filer was without authority to hire or discharge men.  Smith testified that, after the respondent had gone to work, he told the manager that the respondent was working on the machine and that he, the manager, said, "that was all right."  This conversation is squarely and positively denied by Cline.  The question was

submitted to the jury under a proper instruction. Notwithstanding the fact that we may believe that the evidence on this question preponderates in favor of the appellant, we are not at liberty to disturb the verdict of the jury.

The appellant had in its employ a millwright whose duty it was to make needed repairs in and about the mill and machinery. It is therefore claimed that the respondent, in putting the block upon the tipper-table, was engaged in a work beyond the scope of the employment. It is unnecessary to review the facts and circumstances tending to support the respective contentions upon this question, for the reason that the respondent was not injured while repairing the tipper-table. The injury occurred while making the adjustment after the repair work had been completed. There is abundant evidence which justified the jury in finding that, had the tipper-table been repaired by the millwright, an adjustment would have been necessary by the operator of the machine after it was set in motion. The shingle saw while at rest is "dished" or "concave." When in motion, due to the tension which has been given it, it "stands up," and runs true. An adjustment of the tipper-table when the saw was at rest would not have obviated an adjustment after the saw had been set in motion, owing to the change in position of the saw.

It is also contended that the respondent was guilty of contributory negligence in attempting to make the adjustment when his hand would necessarily come within such close proximity to the edge of the rapidly revolving saw. A number of witnesses testified that the manner in which the adjustment was attempted was customary and proper. The question of contributory negligence, like most of the other vital questions in this case, was one of fact and not of law, and was for the jury to determine upon the conflicting evidence.

Error is also sought to be predicated upon certain instructions given, and the refusal to give requested instruc-

tions.  The instructions given covered the law of the case.
Nothing more was required.  It is not error to refuse to
give a requested instruction, even though it correctly state
the law, where the same question is covered by an instruc-
tion given, though couched in different language.

It is next claimed that, in any event, the verdict, even as
reduced by the trial court, is excessive.  The respondent, at
the time of the injury, was twenty-nine years of age, and was
capable of earning from $3.25 to $4.50 per day.  He was a
skilled shingle sawyer.  The loss of the fingers from his left
hand will seriously interfere with his pursuit of that calling,
or any other physical labor that requires the use of both
hands.  The evidence shows that he has not the education or
qualifications for employment which does not involve physical
labor.  The trial court, after considering the evidence, re-
duced the verdict to the sum of $5,000.  Under the evidence
in the case, a further reduction by this court would not be
justified.

One of the grounds upon which the motion for new trial
was based was that of newly discovered evidence.  Smith, in
testifying as to the conversation which he had with Cline
wherein the latter said it was all right for the respondent to
go to work in the mill, fixed this conversation as of the 27th,
and the time when he received his check.  Cline testified that
the check was delivered on the 25th, which would be the Sat-
urday previous.  The check was written by the bookkeeper.
During the first day of the trial, Smith testified to his ver-
sion of the transaction.  The bookkeeper resided at Sumas,
Washington, a town within the county where the trial took
place.  No effort appears to have been made to secure her
presence at the trial after the testimony of Smith had been
given.  Upon the hearing of the motion for new trial, affi-
davits were read which stated that the bookkeeper would
testify that the check was given to Smith on the 25th.  The
trial court held that the showing was not sufficient to war-
rant the granting of a new trial.  In this, there was no er-

ror.   The evidence, if given, would only be cumulative, and there was not a sufficient showing of diligence in attempting to secure the testimony prior to the close of the trial.

In the briefs in this case, many authorities are cited upon the various questions presented.   A review of these has not seemed necessary.   The vital questions in the case are those of fact upon which the evidence was conflicting.   These questions have all been resolved by the jury against the appellant.

The judgment will be affirmed.

CROW, C. J., ELLIS, CHADWICK, and GOSE, JJ., concur.