[No. 12829. Department One. January 5, 1916.]

A. Remsnider, *Respondent*, v. Union Savings & Trust Company, *Appellant*.[1]

Master and Servant—Injuries to Servant—Workmen's Compensation — Extra Hazardous Employments — Dangerous Place — "Workshop." A janitor in an office building, engaged in cleaning the walls of an elevator shaft wherein an elevator was operated by electrical power, is not engaged in "extra hazardous work" within the meaning of the workmen's compensation act, 3 Rem. & Bal. Code, §§ 6604-2 and 6604-3, providing compensation for injuries received in employments recognized as "inherently and constantly dangerous" and enumerating certain occupations as such, in which enumeration is included "workshop," defined as a "room or place wherein power-driven machinery is employed;" since the place was not a "workshop" and it is not provided that employment in every place wherein such machinery is used is impressed with an extra hazardous character.

Same — Workmen's Compensation Act — Extra Hazardous Employments—Statutes. The work of a janitor in cleaning the walls of an elevator shaft in an office building is not "extra hazardous" within the meaning of the workmen's compensation act, 3 Rem. & Bal. Code, § 6604-1 *et seq.*, by reason of the clause in § 6604-2, providing that, if there be or arise any extra hazardous occupation or work other than those enumerated, it shall come under the act and its rate of contribution to the accident fund shall, until fixed by legislation, be determined by the industrial insurance department, where such employment has not "come to be, and to be recognized as being, inherently and constantly dangerous" as provided in such section, nor enumerated in any of the schedules of extra hazardous employments of § 6604-3, nor in any of the classifications of § 6604-4, nor classified by the department as extra hazardous nor its rate of contribution fixed as provided in such clause of § 6604-2.

Damages—Personal Injuries—Excessive Verdict. A verdict for $5,000 for personal injuries sustained by a janitor, 54 years of age, crushed in an elevator shaft, is not excessive, where the sciatic nerve was injured, resulting in partial paralysis of a leg and foot, there was a small hernia, and injury to the kidneys, and the evidence as to whether the injuries would be permanent was conflicting, making it a question for the jury.

Appeal from a judgment of the superior court for King county, Ronald, J., entered February 25, 1915, upon the

[1]Reported in 154 Pac. 135.

verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in cleaning an elevator shaft. Affirmed.

*Farrell, Kane & Stratton,* for appellant.

*Clem J. Whittemore* and *Peters & Powell,* for respondent.

ELLIS, J.—Action to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant as its janitor. The defendant is the owner of an office building known as the Hoge Building, in the city of Seattle. In the building are maintained and operated three elevators or lifts. The plaintiff, as janitor, was directed by the superintendent or head janitor to go into the elevator shaft beneath the elevator cage and scrub down the walls and doors. While he was so employed, the elevator was run down into the shaft, crushing him between the board across the shaft on which he was reclining and the bottom of the cage.

At the trial, defendant's negligence was conceded. The only contested issue of fact was as to the extent and character of the injuries sustained by the plaintiff. The jury returned a verdict in favor of the plaintiff for $5,000. From the judgment thereon, the defendant appeals. The record sufficiently presents two questions, which we shall consider in their logical order.

The appellant's first claim is that the respondent, while engaged in cleaning the elevator shaft, was a "workman" engaged in "extra hazardous work," within the meaning of the workmen's compensation act, chapter 74, Laws of 1911, p. 345 (3 Rem. & Bal. Code, § 6604-1 *et seq.*), and that the court, therefore, had no jurisdiction of the action. It is argued that the elevator shaft, wherein was operated an elevator driven by electricity and wherein the respondent was working when injured, was such a place as to make the respondent's work extra hazardous within the meaning of §§ 2 and 3 of the act, in that it was a "room or place wherein power-driven

machinery is employed." The appellant relies upon our decision in *Wendt v. Industrial Insurance Commission*, 80 Wash. 111, 141 Pac. 311, as decisive of this point. In that case, the deceased was a carpenter, regularly employed as such by a corporation operating a large department store. His duties comprised making shelving, display standards, repairs, additions, alterations and the like about the store. The company maintained a repair shop primarily for the repairing of its delivery wagons and automobiles. In this shop, besides a carpenter bench and carpenter's tools, there were a power lathe, an emery wheel, a grindstone, drills, etc., operated by electricity. The deceased met his death through receiving an electric current while turning on a switch to put in motion the grindstone for the purpose of sharpening a chisel. After a careful analysis of the statute, we held, in substance, that the company conducted, as a department of its business, this shop, which was extra hazardous within the enumeration of § 2 of the act, being a "workshop" as defined in § 3, a ". . . room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise in or incidental to the process of making, altering, repairing, printing or ornamenting, finishing or adapting for sale or otherwise any article or part of article, machine or thing, over which premises, room or place the employer of the person working therein has the right of access or control." Our decision was based upon the plain fact that the shop there in question met the definition of a workshop, and that the deceased met his death in attempting to operate the power-driven machinery in connection with his regular employment, that of "carpenter work," which is in § 4 of the act specifically classified as among the extra hazardous works contemplated by the act.

The distinction between the *Wendt* case and the case before us seems clear. If an elevator shaft in an office building is, as appellant argues, a "room or place wherein power-driven machinery is employed," so as to fall within the

meaning of the workmen's compensation act, then it is such because the elevator shaft is a workshop, since the language quoted is employed in § 3 of the act as defining the word "workshop" as used in the enumeration of extra hazardous works found in § 2. The act does not say, nor does it imply, that every place in which power-driven machinery is employed impresses an extra hazardous character on work performed in such a place. It merely employs the circumstance of the presence of power-driven machinery in connection with a number of other things in defining a workshop. If the presence of power-driven machinery is the sole determining factor, then every shaft in which is operated a power-driven elevator or lift is a workshop. Then, also, the operator of the elevator, and every employee of the appellant who in the course of his duties had occasion to enter the elevator to pass from one floor to another, would be employed, for the time being, in a room or place wherein power-driven machinery is employed—hence, in a workshop, and in an extra hazardous work.

Though the respondent was injured in a place where power-driven machinery was employed, it cannot, by the widest stretch of the meaning of the statute, be termed a workshop. Though his regular employment was at times fraught with hazard, as are all employments, it was not one which, to use the language of § 2 of the act, has "come to be, and to be recognized as being, inherently and constantly dangerous." Neither was it connected with any of the occupations enumerated as extra hazardous in § 2, nor is it mentioned in any of the schedules in § 3, or in any of the classifications in § 4. Section 2 of the act closes with the provision that:

"If there be or arise any extra hazardous occupation or work other than those hereinabove enumerated, it shall come under this act, and its rate of contribution to the accident fund hereinafter established, shall be, until fixed by legislation, determined by the department hereinafter created, upon the basis of the relation which the risk involved bears to the risks classified in section 4." 3 Rem. & Bal. Code, § 6604-2.

But neither the work of a janitor in an office building nor working in or about an elevator shaft has yet been classified by the department as extra hazardous, nor has any rate of contribution been fixed as provided in the clause quoted.

In the recent case of *Guerrieri v. Industrial Insurance Commission*, 84 Wash. 266, 146 Pac. 608, after another careful analysis of the statute, we held that one who was employed in operating a passenger or freight elevator or lift in a mercantile establishment was not engaged in an extra hazardous employment within the meaning of the statute. That decision, by plain inference, is contrary to the appellant's contention here. Respondent was not engaged in an extra hazardous work within the meaning of the act. Though § 2 points out that "there is a hazard in all employments," it provides statutory compensation only for injuries received in employments recognized as "inherently and constantly dangerous," and which it enumerates as extra hazardous. As we said in the *Guerrieri* case:

"The manifest intent of the law is not to cover and compensate for accidents generally, but to cover accidents occurring in those employments or occupations which are specifically classed as, or which may be found by the commission to be, extra hazardous."

On a careful reconsideration of the whole question, we are satisfied that the *Guerrieri* case was correctly decided and is controlling on the facts here.

The other contention is that the verdict is excessive. The injury was mainly to the sciatic nerve, resulting in a partial paralysis of the right leg and foot. There was also a small hernia and an injury to the kidneys, causing a passage of blood. All of these conditions persisted at the time of the trial, nine months after the injury, the last, however, only to a slight extent. The leg was still swollen and of a bluish color. The respondent was still on crutches. He is nervous and suffers from insomnia. He is fifty-four years old, but had always been strong and well prior to the injury. As to

the man's condition at the time of the trial, the testimony presents a sharp conflict. Of five physicians who had examined him a short time prior to the trial, two intimated a belief that he was malingering, and were of the opinion that the injury to the leg was not permanent. Three were strong in the opinion that his suffering was real, and two were of the positive opinion that the injury to the leg was permanent. The third expressed doubt as to whether the full use of the leg would ever be restored. Upon this conflict of evidence, the question of the permanency of the injury was one for the jury, as was also the amount of the damages. The award is large, but the evidence gives us no warrant to interfere with the verdict. To do so would be a wanton invasion of the province of the jury.

The judgment is affirmed.

MORRIS, C. J., CHADWICK, MOUNT, and FULLERTON, JJ., concur.