[No. 16162.  Department Two.  July 21, 1921.]

# EDMUND C. BARNEY, Respondent, v. J. A. ANDERSON, Appellant.[1]

MASTER AND SERVANT (2)—RELATION—EVIDENCE OF EMPLOYMENT. In an action for personal injuries, the relation of master and servant between defendant and plaintiff was established by evidence showing that defendant, who was the owner of several farms, employed plaintiff to work on a hay-baling machine for a period of six weeks and possibly longer, if he could find hay to bale on the outside; that, after finishing work on one of defendant's farms, the machine was moved to a neighbor's farm to bale his hay, the defendant feeling obliged to do his neighbor's baling because the latter had gone out of his way to do the defendant's threshing; and that there had never been any intimation to the plaintiff of any change in his employment substituting a new master in place of his employer.

SAME (77)—MASTER'S LIABILITY—VICE-PRINCIPALS—FOREMAN—AUTHORITY OF SUPERINTENDENCE—DELEGATION OF DUTY. The fact that the foreman of the baling machine, in his absence, was accustomed to delegate the duty of operating it to his brother, constituted the latter a vice-principal of defendant, charged with the duty of furnishing plaintiff a reasonably safe place in which to work.

SAME (77). In determining whether an employee occupies the position of vice-principal, the power of superintendence and control is the test, and not the question whether he had authority to employ or discharge workmen.

SAME (113)—CONTRIBUTORY NEGLIGENCE—METHODS OF WORK. The fact that a safer method of oiling a baling machine existed does not establish contributory negligence on the part of plaintiff, where it appears there was no danger in the method pursued until the machine was started without any notice to him by the person under whose order he was working and who negligently took no notice of the situation of plaintiff.

SAME (20-1)—MASTER'S LIABILITY—WORKMEN'S COMPENSATION ACT. Accidental injury while engaged in work connected with the operation of a hay-baling machine on a farm does not come within the purview of the industrial insurance act.

SAME (130-1)—ACTIONS—ADMISSIBILITY OF EVIDENCE—EXISTENCE OF RELATION. A letter written by defendant to the foreman in

[1]Reported in 199 Pac. 452.

charge of a hay-baler concerning the delivery of the machine to the foreman's brother for the latter's own use was properly excluded in an action by a servant against defendant for personal injuries due to negligence in the operation of the baler, where the writing of the letter or its subject-matter was in no way, either directly or indirectly, called to the attention of plaintiff.

DAMAGES (86)—INADEQUATE DAMAGES—INJURY TO ARM. Damages to plaintiff in the sum of $4,000 for the loss of his right arm about six inches below the shoulder should be increased to $7,500, where the evidence showed he was twenty-three years of age, an experienced woodsman who during six years had earned from $4.40 to $9.00 per day, and in recent farm work had earned from $5.00 to $8.00 per day.

Cross-appeals from a judgment of the superior court for Spokane county, Hurn, J., entered May 14, 1920, upon findings in favor of the plaintiff, in an action for damages, tried to the court. Reversed on plaintiff's appeal.

*Zent & Jesseph,* for appellant.

*Lee & Kimball,* for respondent.

MITCHELL, J.—This is an action for damages for personal injuries alleged to have been sustained by the plaintiff while employed by the defendant. The case was tried without a jury and resulted in a judgment in favor of the plaintiff. The defendant has appealed. Also the plaintiff has cross-appealed, claiming the award was too small. The parties will be spoken of as plaintiff and defendant.

Much of the evidence is conflicting. Upon an examination of it, we are satisfied as was the trial court. The plaintiff was engaged with a crew in operating a hay baling machine. The machine was run by an engine so connected that its power could be disengaged from the baling machine by the use of a clutch operated by a lever—a part of the machine. A pin in the machine broke and Carl Riggins, the operator in charge

of the machine, threw it out of gear leaving the engine
running, and went to the tool wagon nearby to make a
wooden pin for repairs. He ordered the machine to be
oiled while it was idle. There is a dispute as to whom
the order was given; several, including the plaintiff,
testified the order was given to the plaintiff who had
usually performed that service since he had been work-
ing with the crew. While the plaintiff was thus en-
gaged, the operator was driving the wooden pin, just
made, into the machine, and in doing so, or while at
that position, moved the lever which caused the clutch
to engage the power which started the machine and
caused the injuries complained of. Carl Riggins testi-
fied that the machine was thrown into gear accident-
ally. However, there is evidence which tends strongly
to show that it was not accidentally but that he pur-
posely threw it into gear; that almost immediately
upon the happening of the accident he repeatedly said
"why did I throw it into gear." He denied making
the statement, but did admit that he paid no attention
to any one else and did not notice that any one was
oiling the machine.

(1) It is claimed the relation of master and servant
between the parties did not exist at the time of the
accident. There is convincing evidence to show sub-
stantially the following facts: That the defendant
owned several farms in the vicinity and that on or
about August 26 he employed the plaintiff, a stranger,
to work at bailing hay on one of his farms. He took
the plaintiff out to the farm and introduced him to
the foreman, R. L. Riggins, who put plaintiff to work.
The crew consisted of a number of men including Carl
Riggins, a brother of the foreman. It appears that
the baling machine was operated by the foreman most
of the time but during his absence by his brother. The
work was finished at this place on Saturday, Septem-

ber 6, when, at about eleven o'clock in the morning, the outfit and crew, including the foreman and his brother, were moved to the adjoining place belonging to one Usher. The foreman directed the work of moving the outfit. After moving, the crew went back to defendant's place for their noon day meal, after which they returned to work at the Usher place. The foreman, R. L. Riggins, operated the machine as usual that afternoon.

Thereafter, on the following Monday and Tuesday, the operation of the machine with essentially the same crew was under the immediate direction of Carl Riggins until plaintiff was hurt on the morning of the 9th. The foreman arrived at the scene a few moments before plaintiff was hurt. It is the theory of the defendant that he was in no way responsible for the use of the machine on the Usher place and that that work was being done by Carl Riggins wholly independent of any responsibility on the part of the defendant. In this he is corroborated by several witnesses including his foreman and Carl Riggins, and that the plaintiff was aware of the change of masters. That theory is flatly contradicted by the plaintiff. His evidence, strongly corroborated, shows that when first employed the defendant informed him he would need him at baling hay for six weeks and possibly longer if he could find hay to bale on the outside; that the foreman told him before finishing on defendant's place that when they moved over to the Usher place his brother "Carl will look after it", that he (the foreman) had a lot of work to do at home and would not be with the machine all the time.

The plaintiff further testified, "absolutely nothing was said to me by Mr. Anderson or Mr. Riggins or by anybody relative to their being any change in my employment at any time before I was hurt. If I had known

that there was any change, or if I had known that the work was the individual work of Carl Riggins I would not have continued in my employment.'' On finishing the work on defendant's place, nothing was said about paying the crew and indeed the plaintiff and his cousin, who were employed at the same time and who worked together and quit at the same time, never received any pay until after the plaintiff was hurt. The machine belonged to two brothers named Mullen. One of them testified, substantially, that the defendant hired the machine saying he had two hundred tons of hay and another fellow, named Usher, that much more. That the next time he saw the machine it was on the Usher place. He, his brother and defendant's foreman were at the baler at the time the foreman said he would like to finish that job for Usher and would bring the baler back.

''He (the foreman) said that Usher had really gone out of his way to do their threshing for them and they would like to oblige him by doing his baling. After that I did not have any conversation with R. L. Riggins when Carl was present. Nothing was said about Carl leasing the machine or anything of that kind, R. L. Riggins was running it then, he was working it over there and we imagined he was running it the same as before. I did not know of any change in the contract.''

The other brother testified to the same effect, and further said that he didn't know there was any claim that Carl was leasing the machine until after the plaintiff was hurt.

The plaintiff's proof is convincing, and the contention that he was not a servant of the defendant is unavailing. Notwithstanding the conflict in the evidence, we are satisfied that at the time the plaintiff was hurt the responsibility was that of the defendant as the master and not that of Carl Riggins. Certainly he was employed by the defendant. When did the relation ter-

minate? The owners of the machine never let it to Carl Riggins, nor did they give the defendant any authority to do so. Carl Riggins did not employ the plaintiff, who says he would not have worked for him. One has the right to know for whom he works and of any attempt to enforce a change of masters. At the time of the accident, there was nothing in the situation inconsistent with the terms, scope and purpose of the original employment, except as indicated by some of the testimony of the foreman and his brother which is flatly denied by the plaintiff and other witnesses and the circumstances.

"The liability of a master to a servant does not cease —the servant not having been informed of any change —although, as between the master and a third person a change is made by which thereafter the work is to be done for such third person." 26 Cyc. 1087.

Being unable to agree with the defendant as to his view of the facts it becomes unnecessary to discuss his authorities upon this branch of the case.

(2) It is argued that Carl Riggins was not a vice-principal of the defendant and that as he was engaged in the immediate operation of the baler at the time of the accident that therefore the defendant is not liable. Having concluded the plaintiff was in the defendant's employment at the time of the injury, it follows that it was the duty of the defendant to furnish the plaintiff a reasonably safe place in which to work, that it be kept in such condition, and that this duty could not be delegated to another in any manner to relieve the master of the liability. While the work was being done on the Anderson place, the foreman put his brother in charge during his absence. The same rule was followed on the Usher place. That was the station assigned to him by the foreman within the knowledge of the plaintiff.

Such being the case, the duties discharged by Carl Riggins were delegated duties and passed to him from the general foreman, the master's primary representative. *Bailey v. Cascade Timber Co.,* 35 Wash. 295, 77 Pac. 377. The mere fact that Carl Riggins did not have authority to employ or discharge workmen as his brother did does not change the rule. The power of superintendence and control is the test. *Allend v. Spokane Falls & N. R. Co.,* 21 Wash. 324, 58 Pac. 244.

(3) It is contended against the right to recover that plaintiff, with full knowledge of danger, undertook to oil the machine in a dangerous and unsafe way when a safe method was open to him and that his own negligence caused the injury. The overwhelming weight of the evidence is to the contrary. His plan of carrying out the order of his superior was approved by nearly all the witnesses who testified. It was the same way he had theretofore performed the service during the whole time he worked with the crew. Certainly there was no danger until the machine was started, without any notice to him, by the person under whose order he was working and who negligently took no notice of him. *Dosset v. St. Paul & Tacoma Lum. Co.,* 40 Wash. 276, 82 Pac. 273.

(4) The contention that the work in which plaintiff was engaged at the time of the accident came within the purview of the industrial insurance act is answered, we think, by the cases of *Guerrieri v. Industrial Insurance Comm.,* 84 Wash. 266, 146 Pac. 608, and *Remsnider v. Union Sav. & Tr. Co.,* 89 Wash. 87, 154 Pac. 135, Ann. Cas. 1917D 40.

(5) Error is claimed upon the refusal of the court to admit in evidence a letter dated September 4, written by the defendant to his foreman concerning the delivery of the baler to Carl Riggins for the latter's own use. We think it was properly refused. It was

private correspondence between those parties and was in no way, directly or indirectly, called to the attention of the plaintiff either as to the fact that a letter had been written or as to the subject-matter discussed in it.

The judgment was for $4,331, consisting of $4,000 for personal injuries and $331 for expenses. It is claimed on the cross-appeal that the $4,000 award is inadequate. The evidence shows that the plaintiff was twenty-three years of age at the time he was hurt and that he suffered the loss of his right arm about six inches below the shoulder; that he was an experienced woodsman and had earned during six years from $4.40 to $9 per day; had lately engaged in the operation of a harvesting machine at $8 per day, and at the time of his injury was earning $5 per day; that he had earned practically nothing since the accident and, of course, is disabled from pursuing any of his former vocations. He is not prepared for any other kind of business. In consideration of the following authorities, viz.: *Shea v. Seattle Lumber Co.,* 47 Wash. 70, 91 Pac. 623, where a man twenty-seven years of age lost his left arm, and $8,000 was adjudged reasonable; *King v. Page Lumber Co.,* 66 Wash. 123, 119 Pac. 180, where a boy twenty years of age lost three fingers and a fourth one injured, and $4,500 was held reasonable; and *Baird v. Northern Pac. R. Co.,* 78 Wash. 67, 138 Pac. 325, where a laborer in a gravel pit was injured by the breaking of the large bone in his wrist causing a limitation of its motion of twenty-five to thirty per cent, and $4,000 was held reasonable; and other cases of a similar sort such as *Glucina v. Goss Brick Co.,* 63 Wash. 401, 115 Pac. 843, 42 L. R. A. (N. S.) 624, and *Woodard v. Cline Lumber Co.,* 81 Wash. 85, 142 Pac. 475, and also more or less independent of the results of those authorities, we are of the opinion, that while there can be no hard and fast rule in such cases because of the fluctuating pur-

chasing power of money and circumstances more or less peculiar in each individual case, that in the present case the award made by the trial court is insufficient and that it should be and is increased to the sum of $7,500 in addition to the sum of $331 for the expenses incurred for hospital, doctors, nurses and drug bills.

Reversed on the cross-appeal and remanded with directions to the trial court to enter judgment accordingly.

PARKER, C. J., MAIN, and TOLMAN, JJ., concur.