[No. 26411. Department Two. April 12, 1937.]

ESTHER ANNA DESSEN, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 66 P. (2d) 867.

70

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*Binns & Cunningham,* for respondent.

TOLMAN, J.—On June 22, 1935, Victor Otto Dessen lost his life by drowning. Seven days thereafter, Sam G. Bulldis, as his employer, filed with the department of labor and industries a formal report of fatal accident, and about a month thereafter respondent, as the widow of deceased, filed a claim with the same department for benefits under the workmen's compensation act. A few days later, the claim was rejected, "after full consideration," for the reason

". . . that death of the deceased was not due to an injury sustained in the course of extrahazardous employment within the meaning of the workmen's compensation act."

Upon application of claimant, a rehearing was granted by the joint board, following which the board made an order in part as follows:

"After careful review and consideration of the entire record, facts and testimony in the matter, the joint board concludes that the supervisor's rejection of the widow's claim for pension was correct and should be sustained; that Victor Otto Dessen at the time of his death was not engaged in the course of extrahazardous employment as defined by the Industrial Insurance Act; that he was in fact engaged not in the oyster industry but in a processing business in which no power-driven machinery was used. That therefore this claim was properly rejected."

From this order, an appeal was taken to the superior court of Pierce county, and after trial that court en-

tered findings of fact, conclusions of law, and judgment, reversing the order of the supervisor disallowing the claim and the order of the joint board affirming such disallowance, and further directed that the widow's claim be allowed, and awarded costs and attorney's fees of five hundred dollars. From this decision, the department has appealed, contending, first, that the occupation of Dessen and the work in which he was engaged were not within any of the classifications specified as extrahazardous; second, that the relationship of employer and employee did not exist; and, third, that the allowance for attorney's fees is excessive.

■ The second contention may be disposed of by saying that the only issue properly before the trial court was that raised by the order of the joint board from which the appeal was taken, namely: Whether or not the injury was sustained in the course of extrahazardous employment within the meaning of the workmen's compensation act. The joint board made no finding or order with reference to the relationship of employer and employee. Consequently, on an appeal, that issue was not carried to the superior court. Under these circumstances, the claimant appealing to the superior court could not there inject an issue which was not decided by the department.

■ The material facts may be stated as follows: A rather small building adjacent to the bay in the city of Tacoma, consisting of two rooms, was used as a place in which to wash, grade, shell, and can oysters. Dessen was in charge of the operation, and a part of his duties consisted in managing the establishment, supplying the workers with oysters to be shelled, graded and canned, overseeing the work, and in keeping the establishment clean. The method of canning is what is known as "cold pack." The cans were sealed by means of a

hand sealer, and no power-driven machinery was used. It was also Dessen's duty to dispose of the shells after the oysters had been removed, and this he did by placing them in sacks, putting the sacks into a row-boat, and rowing the boat out into fairly deep water, where the sacks were dumped overboard. On the occasion of his death, while he was performing this last mentioned duty, Dessen fell into the water and was drowned. The record discloses that, at the time of his death, the plant which he was operating was canning about seventy-five gallons of oysters each day, the cans being of different sizes, and the oysters so canned were sold at wholesale in and about the city of Tacoma.

The most recent legislation fixing the classification of extrahazardous employment is § 1, chapter 193, Laws of 1933, p. 909 (Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471]). However, the record contains a printed pamphlet published by the department which purports to contain the classification of all extra-hazardous occupations as of January 1, 1935, and, in the absence of a showing to the contrary, we must assume that the occupations therein specified have been properly brought within the operation of the compensation act. In this pamphlet appears the following classification: "33-2 . . . oyster industry (includes all operations)." There can be no question but what the description in the foregoing classification is all inclusive. It is as broad as it is possible to make it. It includes all operations of the oyster industry.

The question now presented is whether or not this was an operation included in the oyster industry, or, if not, was it merely a processing business in which no power-driven machinery was used, as was held by the joint board?

In determining this question it seems important,

first, to ascertain what is meant by "industry." This word appears a number of times in the workmen's compensation act. The first section (Rem. Rev. Stat., § 7673 [P. C. § 3468]), refers to "modern industrial conditions" and says that "The welfare of the state depends upon industries."

Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471], provides:

"Inasmuch as industry should bear the greater portion of the burden of the cost of its accidents, each employer shall . . . pay into the state treasury. . . .

"For the purpose of such payments . . . accounts shall be kept with each industry in accordance with the classification herein provided. . . ."

Rem. Rev. Stat. (Sup.), § 7676, follows with a list of what are labeled "Industries" and these are classified under fifty separately numbered classes with numerous subclassifications, there being in excess of three hundred "Industries" thus listed.

In *Guerrieri v. Industrial Ins. Commission*, 84 Wash. 266, 146 Pac. 608, it is said that it was the legislative intent to cover "classes of business." This thought is recognized in *Remsnider v. Union Savings & Trust Co.*, 89 Wash. 87, 154 Pac. 135, Ann. Cas. 1917D, 40; *Barney v. Anderson*, 116 Wash. 352, 199 Pac. 452; and *Edwards v. Department of Labor & Industries*, 146 Wash. 266, 262 Pac. 973.

Nowhere in the act is "Industry" specifically defined, but wherever used it refers only to the types of work, business, and trade which are declared in the act to be extrahazardous, and everything deemed extrahazardous is classified in the enumerated "Industries."

As was said in *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, "certain defined industries (are) called in the act extrahazardous."

Keeping in mind that all extrahazardous occupations are thus classified into "industries," we must next consider what the word "industries," as thus used, means. Webster's New International Dictionary (2nd ed.), defines "industry" as follows:

"Any department or branch of art, occupation or business; esp., one which employs much labor and capital and is a distinct branch of trade; as, the sugar *industry*."

It seems clear from this definition that if one engaged in planting, cultivating, raising, harvesting and selling oysters should also, as a part of his operation, do exactly what was done here, that is, shell, grade, and can a part or all of his product, that he would still be engaged in the oyster "industry;" and, if one who produces the oysters may, as a part of that "industry," process them, as was here done, and still be engaged strictly in the oyster "industry," why should not the operator, who buys oysters from the producer at wholesale and then processes them, also be engaged in the oyster "industry?" To hold otherwise, would bring those employed by the producer in processing under the compensation act, while those employed by one not a producer who purchased his oysters for processing would not be so protected, which would seem to be an illogical and unjust distinction.

From what has been said, it follows that the term "oyster industry" means a distinct branch of business which is devoted in the main to activities peculiarly and particularly concerned with the oyster business. To illustrate: The mere selling of oysters at retail or wholesale in a store or market to the general public, along with other merchandise, could not be said to be engaging in the "oyster industry," but it would rather be a mercantile business. Upon the other hand, an establishment engaged in the shelling, grading, and

canning of oysters as its sole activity, or as a distinct branch of its activity or business (although in a sense processing may be involved), seems naturally to belong to the "oyster industry." Maintaining an establishment for the sole purpose of processing oysters from their natural state to a marketable state would seem to be as much a part of the "oyster industry" as is the propagating and raising of oysters.

We are constrained to hold that, under the facts disclosed by this record, the deceased was engaged in the "oyster industry."

There remains to be discussed the question of the reasonableness of the attorney's fee of five hundred dollars. We have reviewed the cases cited upon this subject, but none furnishes any absolute guide. Rather large fees have been sustained in some cases, as for instance in the case of *Abraham v. Department of Labor & Industries,* 178 Wash. 160, 34 P. (2d) 457, where an important and novel question of law was involved which required an exhaustive search of the authorities and involved a large amount of work. Here, neither the factual issue nor the legal issue is particularly involved, the time required in the trial of the case was not long, and we feel satisfied that a fee of $250 is sufficient and more nearly in line with our previous holdings.

The cause is remanded with directions to the trial court to allow an attorney's fee of $250, to eliminate from his judgment the paragraph directing that compensation be paid, and to remand the cause to the department for further proceedings not inconsistent with what is here said.

Blake, Holcomb, and Robinson, JJ., concur.

Steinert, C. J. (dissenting)—I am unable to agree with the majority.

The record discloses that the deceased was in the

employ of one Sam Bulldis, who, for a number of years prior to the accident here involved, conducted a fish market on Eleventh street in the city of Tacoma, where he sold salmon, shell-fish, oysters and shrimps. About four months prior to the accident, Bulldis endeavored to get the city health department to permit him to open and can oysters at his place of business. This was refused for sanitary reasons.

At the suggestion of the health department, Bulldis then established a small plant on the water front within the city limits. Bulldis *bought* the oysters, in the shell, at Bay Center, whence they were brought in trucks to the plant and there opened and canned. The oysters, thus processed, were then delivered to Bulldis' place of business on Eleventh street, where they were either sold at retail or else distributed to other fish markets.

Although it may not be of controlling importance, it may be said, incidentally, that Bulldis never paid any insurance premiums on any part of his business.

From the facts hereinbefore stated, I do not believe that it can reasonably be held or said that Bulldis was engaged in the oyster industry, within the meaning of the statute or within the classification made by the department.

It will be observed that the classification under class 33-2 is " . . . oyster industry (includes all operations)," and not merely *oysters* (*includes all operations*), that is to say, the classification pertains to an *industry* and not simply to an article of food; or, in other words, the protection afforded by the statute and classification covers a particular industry and not the various activities pertaining to a product of the industry.

I may illustrate the thought that I have in mind in this particular instance by reference to several large

and important industries in this state, applying to them an assumptive terminology similar to that actually used in the above classification with respect to oysters.

Take, first, the wheat industry. Were there such a general classification inclusive of all operations, it surely could not be said that the miller, the processor, or the baker, who handles wheat products, was engaged in the wheat industry within the meaning of such classification.

Take, next, the fruit industry, similarly described. Under such general classification, one who prepared the fruit for sale or consumption, after purchase from the grower, would not be included in the act. Again, were there a like classification of the cattle industry, it would not, under that heading, include the butcher or the packer. The same could be said of the chicken industry.

Consider, also, the timber industry and its operations. If it were classified as such, it certainly would not include the operations of the sawmill making lumber out of timber that had been bought from or through a logger.

Whatever specific classification might be made by the department of these secondary activities, they would not, in my opinion, fall within the larger, general classifications of primary industries.

The term "the oyster industry (includes all operations)," as I view it, has reference to the cultivation and harvesting of oysters and whatever is necessary thereto. What occurs thereafter is merely a manufacturing, processing, or merchandising activity, having an incidental, but not a necessary, connection with the operation of the industry itself as such. It may be conceded that, where the successful conduct of the industry would necessarily include some activity which,

separately, would take on an independent character, the entire business or operation might well come within the statute. But that is not the case here. While it is necessary that oysters be opened in order to prepare them for preservation and consumption, that process is not a part of the oyster industry itself.

The majority opinion, it seems to me, expresses an undue disturbance over the thought that, if the producer processes the oysters, such processing would be considered a part of the oyster industry, while, if the independent operator did the same thing, it would not be considered as a part of the industry. The answer to this reasoning, it seems to me, is two fold: (1) Assuming that a major operation includes a lesser one intimately connected with it, and forming a part thereof, it does not follow that the lesser operation, if distinct from the greater, nevertheless must be considered in the same category; (2) if, in connection with a primary operation, large in extent and coming within the act, a separate and distinct activity be engaged in, the minor activity would not be a part of the primary operation, necessitating that the lesser come within the classification of the greater, nor would the workmen's compensation act afford protection in the minor activity, even though conducted by one who in other respects is within the act, unless the minor activity comes within some specific classification covering it.

For the reasons given, I am compelled to dissent.