339 F.Supp. 159 (1972)
Arthur BRUNE, Plaintiff,
v.
Charles J. MORSE et al., Defendants.
No. 71 C 275(4).
United States District Court, E. D. Missouri, E. D.
February 4, 1972.
Burton H. Shostak, Kramer, Chused & Kramer, St. Louis, Mo., for plaintiff.
Wiley, Craig, Armbruster & Wilburn, St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
This is a suit for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57, Federal Rules of Civil Procedure, brought under Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185(a) to determine plaintiff's rights to funds under a union pension trust. Plaintiff also seeks damages, an accounting, attorney's fees and costs.
The parties have entered into a Stipulation of facts and issue of law, with exhibits of pertinent documents and have submitted briefs to the Court, as well as oral argument. The Court adopts said stipulation as its findings of fact.
Plaintiff, Arthur Brune, was born November 17, 1905. On February 17, 1969, plaintiff applied for a pension from defendant, Central States, Southeast and Southwest Areas Pension Fund, (hereafter referred to as "The Pension Fund"), and the application was finally and formally denied (after appeal) on December 7, 1970. Plaintiff worked for International Shoe Company from 1927 until 1960 as a production worker operating shoe manufacturing machinery (a lasting machine). From 1961 until 1969, plaintiff worked as a warehouseman at Buescher's Wholesale.
Defendant, Pension Fund, denied plaintiff's application for pension benefits on the basis that plaintiff's years with International Shoe Company could not be credited as years of "employment in the teamster industry" as that term is used in Article I, Sections 11-A, 12 *160 and 14 of the Pension Plan. Section 11-A(1) (a) describes employment which is covered by the plan, insofar as it is pertinent here, as:
"Employment within a classification of work and in an industry which was at the time of such employment normally covered by Teamster contracts in the local metropolitan area...."
Defendant, Pension Fund, did credit plaintiff for all time worked as a warehouseman for Buescher's Wholesale, a total of seven and one-half (7½) years. Buescher's Wholesale paid pension contributions to defendant, Pension Fund, on behalf of plaintiff for five (5) weeks in 1967, fifty-two (52) weeks in 1968, and twenty-six (26) weeks in 1969, for a total of eighty-three (83) weeks.
There is no other period of employment for which plaintiff makes claim of creditable service years, and the parties stipulate that the only issue in this case is whether plaintiff's employment with International Shoe can be treated as years of service for which credit can be given toward a pension from defendant, Pension Fund.
There was an exchange of correspondence in 1965, by which an employee of a Teamster local union inquired whether the Pension Fund would give credit to employees of Consolidated Forwarding Company, "a subsidiary of International Shoe Company, [if] the majority of employees were all former employees of International Shoe Company when the plant was in the manufacturing end instead of warehousing and distribution." In response, the Fund's executive secretary said "Employees (of the Consolidated Forwarding Company) would be given past service credits for the period of employment with International Shoe Company." Plaintiff was a former employee of International Shoe's Washington, Missouri, facility, but he came into the Plan as a warehouseman for Buescher's Wholesale, not as part of the Consolidated Forwarding group mentioned in this correspondence.
Beginning in November of 1949 the teamsters' union, Local 688, in St. Louis, Missouri, bargained with and to date has under contract persons engaged in the retail business of boot and shoe repairing. By the terms of two samples of such contracts, under the "definition" section of each, the term "all around shoemaker" is defined as:
"any person capable of performing any and all of the operations required upon shoes during the process of repair. It does not include dying or shining."
The term "laster" is defined to mean:
"any person engaged in the process of lasting or relasting shoes."
Washington, Missouri, is fifty-four miles from St. Louis, Missouri.
Plaintiff must demonstrate twenty years' service in the industry to gain normal retirement benefits, but he cannot meet that requirement unless his employment as a shoe factory production worker is treated as credited time in the teamster industry. And to establish the credited time in the teamster industry, plaintiff must show that the job of a shoe factory production worker was covered by Teamster contracts in the metropolitan area. And, under the terms of the Plan, plaintiff must demonstrate that a Teamster contract normally existed during the same time as to three things: 1) the same classification of work, 2) and in the same industry, and 3) in the same local metropolitan area.
Initially, the Court determines that Washington, Missouri, is within the St. Louis metropolitan area for purposes of this lawsuit.
It is the opinion of the Court that the 1965 correspondence referred to above is not evidence that plaintiff's employment with International Shoe is "within the teamster industry." In that correspondence, the local union asked whether credit would be given for employment at the parent corporation (International Shoe) if the first Teamster contract was with the subsidiary (Consolidated Forwarding) which took over the facility. *161 The plan provides that a participant will gain retroactive credit for "employment in the same classification of work in which employed after the effective date under a teamster contract...." (Article I, Section 11A(1) (b), Exhibit 2). Thus, back credit for employment at International Shoe came under the Plan because the same facility was eventually covered by a Teamster contract with the subsidiary, Consolidated Forwarding. Plaintiff's circumstances are quite different. Plaintiff entered the Plan through employment at an entirely different company at a different location and in an entirely different business, where he performed different work.
Assuming, without deciding, that the Executive Secretary could bind the Fund and Trustees, the Court finds that his statements as contained in the 1963 correspondence are not controlling here.
Defendant's contention that only the "traditional Teamster skills of a driver or warehouseman" constitute employment within the teamster industry is without merit. The stipulated facts and exhibits in this case show clearly that for over twenty years, teamster contracts covered employees of a shoe repair firm. Moreover, these contracts specifically provide that the employer recognizes the (teamsters) union as the exclusive bargaining agency for, and that the union's jurisdiction includes all employees doing work as, fitters, orthopedic workers, manager, working manager, all around men, benchmen, finishers, machine operators, lasters, dyers, countermen, counterwomen, rip and patch men, tailors, shoe cleaners, shoe shiners, hat cleaners, pressers, delivery boys and porters. Conspicuously absent is any reference to "drivers or warehousemen." It would seem that employees organized by a teamster union, necessarily having to be teamster members, are working within the teamster industry.
Defendant contends that "lasters" were not covered by the contract because the contract contains no wage scale for lasters (a bargained wage rate being the core of any labor contract). Plaintiff points out that under the wage portion of the contract, a minimum weekly wage rate is placed opposite the term "all around men", which includes all operations required in shoe repair, presumably including lasting or relasting.
The Court is unable to determine from this record whether, in fact, a laster was covered by the teamster contract. But the contract on its face (Article I) states that "lasters" are covered: that the teamster union is the exclusive bargaining agent for lasters and that the teamster union's jurisdiction includes lasters. Thus, the same classification of work as plaintiff's was covered by a teamster contract.
There remains for determination the question of the industry. Defendant contends that a retail shoe repair business is a different industry from that of shoe manufacturing. Plaintiff's position is that the work is the same and therefore the industry is the same.
It is the opinion of the Court that the business of repairing shoes is not the same industry as that of manufacturing shoes although the subject matters of the two businesses are the same  shoes. Manufacturing is producing or making shoes. The logical extension of that process might well include distribution, marketing and ultimate retail sale to the consumer. However, shoe repair is a service performed at the request of and to the benefit of the shoe consumer. It is independent of and outside the process of manufacturing and producing shoes for ultimate sale to the consumer.
Black's Law Dictionary defines "Industry" as:
Any department or branch of art, occupation, or business conducted as a means of livelihood or for profit; especially, one which employs much labor and capital and is a distinct branch of trade. Chicago, R. I. & P. Ry. Co. v. State, 83 Okl. 161, 201 P. 260, 264; Dessen v. Department of *162 Labor and Industries of Washington, 190 Wash. 69, 66 P.2d 867, 869.
Identical skills or crafts are utilized in different industries without altering the classification of the skill and without merging the industries into one single industry. The service of repairing shoes is a branch of trade distinct from that of manufacturing shoes.
Accordingly, the Court finds that at the time of plaintiff's employment as a shoe production worker, that industry was not normally covered by teamster contract in the local metropolitan area. The Court concludes that plaintiff's years of employment with International Shoe cannot be treated as years of service for which credit can be given toward a pension from the defendant Pension Fund. Judgment will be entered accordingly.