Arthur BRUNE, Plaintiff-Appellant,

v.

Charles J. MORSE et al., Defendants-
Appellees.

No. 72–1122.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 19, 1972.

Filed March 20, 1973.

Rehearing Denied May 4, 1973.

Burton H. Shostak, St. Louis, Mo., for plaintiff-appellant.

Alan M. Levy, Milwaukee, Wis., for defendants-appellees.

Before HEANEY and STEPHENSON, Circuit Judges, and BOGUE, District Judge.*

HEANEY, Circuit Judge.

The sole issue on this appeal is the right of Arthur Brune to receive pension benefits from the Central States, Southeast and Southwest Areas Pension Fund on normal retirement. The trial court, 339 F.Supp. 159, held that Brune was not entitled to receive benefits because he had not been employed in the "Teamster industry" for twenty continuous years. We affirm.

Various Teamster affiliates and employers with whom they had collective

* District of South Dakota, sitting by designation.

bargaining agreements negotiated a pension plan to be effective July 1, 1964.[1] Under the plan, an employee is eligible for normal retirement if he meets the following conditions at the time of retirement.

(1) Age 57.

(2) Twenty years of service in the Teamster industry.

(3) Five years of service under a Teamster collective bargaining agreement.

(4) Eighty weeks payment into the pension fund on his behalf.

(5) Is in an employee classification status at the time of retirement.

It is conceded that Brune meets all qualifications except the one requiring twenty years of continuous service in the Teamster industry.

Service in the Teamster industry is defined in the plan as follows:

"(a) Employment within a classification of work and in an industry which was at the time of such employment normally covered by Teamster contracts in the local metropolitan area; and/or

"(b) Employment in the same classification of work in which employed after the Effective Date under a Teamster contract and on which pension contributions have been made on behalf of the employee; and/or

"(c) Employment requiring the usual Teamster skills in traditional Teamster industries at the time of such employment; * * *"

Brune worked for the International Shoe Company, in St. Louis, Missouri, from 1927 until 1960, as a lasting machine operator. That company did not have a collective bargaining agreement with a Teamster Union during that period and did not make contributions to the Central States Pension Fund. Moreover, the Teamsters Union did not have collective bargaining agreements with other shoe manufacturers in the St. Louis area during the period. The Teamsters Union did, however, have collective bargaining agreements with retail shoe repair shops in the area, and such contracts covered persons who operated lasting machines.

Brune worked as a warehouseman at Buescher's Wholesale in St. Louis, Missouri, from 1961 to 1969. That company had a collective bargaining agreement with the Teamsters and contributed to the Central States Pension Fund on behalf of Brune from 1967 to Brune's retirement in 1969.

When Brune retired, he applied for a pension. He added his years of service with International Shoe to his years of service with Buescher's Wholesale to obtain the necessary twenty years. The trustees denied Brune's application on the grounds that he did not have twenty years of credited service within the Teamster industry. They stated that Brune was entitled to credit for all years worked for Buescher's Wholesale but not for the years worked for International Shoe. They did so on the grounds that during the years he worked for International Shoe, Brune was a production worker in a shoe factory rather than in a retail repair shop, and that there were no Teamster contracts covering production workers in shoe factories in the geographic area during the years in question.

Brune commenced an action in District Court. He again contended that he was entitled to credit for his years of service with International Shoe Company. The court rejected this contention. It stated:

"It is the opinion of the Court that the business of repairing shoes is not the same industry as that of manufacturing shoes although the subject matters of the two businesses are the

[1]. Union participants were the Central Conference of Teamsters, the Central States Drivers Council, the Southern Conferences of Teamsters, the National Truckaway and Driveaway Conference, affiliated unions, and such other unions as the trustees may agree upon. .

same—shoes. Manufacturing is producing or making shoes. The logical extension of that process might well include distribution, marketing and ultimate retail sale to the consumer. However, shoe repair is a service performed at the request of and to the benefit of the shoe consumer. It is independent of and outside the process of manufacturing and producing shoes for ultimate sale to the consumer.

"Black's Law Dictionary defines 'Industry' as:

" 'Any department or branch of art, occupation, or business conducted as a means of livelihood or for profit; especially, one which employs much labor and capital and is a distinct branch of trade. Chicago, R. I. & P. Ry. Co. v. State, 83 Okl. 161, 201 P. 260, 264; Dessen v. Department of Labor and Industries of Washington, 190 Wash. 69, 66 P.2d 867, 869.'

"Identical skills or crafts are utilized in different industries without altering the classification of the skill and without merging the industries into one single industry. The service of repairing shoes is a branch of trade distinct from that of manufacturing shoes.

"Accordingly, the Court finds that at the time of plaintiff's employment as a shoe production worker, that industry was not normally covered by teamster contract in the local metropolitan area. The Court concludes that plaintiff's years of employment with International Shoe cannot be treated as years of service for which credit can be given toward a pension from the defendant Pension Fund. * * * "

On appeal, Brune again contends that he is entitled to credit for his years of service with International Shoe Company.

A careful review of the record and briefs convinces us that the trial court properly denied Brune's petition for relief. On the basis of the record presented to this Court, it is clear that the trustees did not abuse their discretion in holding that shoe manufacturing was not an industry normally covered by Teamster collective bargaining agreements during the period 1927 through 1960.[2] To the contrary, the record establishes that the Teamsters did not have shoe manufacturing companies under contract during that period. Nor did the trustees abuse their discretion in holding that Brune's employment during the 1927 through 1960 period had not required "the usual Teamster skills in traditional Teamster industries during the time of such employment." What evidence there is in the record on this point supports the view that this portion of the coverage language was intended primarily to cover drivers and warehousemen.

We recognize that the language of the pension plan is so broad and so ambiguous that it invites arbitrariness on the part of the trustees;[3] but, here, the trustees' action was consistent with the letter of the plan and in accord with the purpose of providing pensions to those for whom contributions have been made over a period of years. Moreover, the trustees' decision, if consistently fol-

2. "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion."
Restatement (Second) of Trusts § 187 (1959). See also, Roark v. Lewis, 130 U.S.App.D.C. 360, 401 F.2d 425 (1968); Miniard v. Lewis, 128 U.S.App.D.C. 299, 387 F.2d 864 (1967), cert. denied, 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed. 144 (1968).

3. In 1965, the executive secretary of the pension fund, in response to an inquiry by a local Teamster Union, stated that employers of a recently-organized subsidiary of the International Shoe Company would be given credit for past service with the parent. Brune contends that this letter supports his position. We agree that it may, but this record does not contain sufficient evidence to establish that it does. Moreover, no showing has been made that the executive secretary had authority to bind the trustees.

lowed, will strengthen the pension fund. To set aside the trustees' decision here would give the plan a universality not intended and make it increasingly difficult for the plan to provide adequate benefits for employees with long years of service with employers who have contributed to the fund.[4]

Affirmed.

See also 343 F.Supp. 978.

---

4. A further consideration in sustaining the trustees' decision is the rapidly growing concern with respect to vesting of pension benefits. The Central States Plan requires that an employee be actively employed by a participating employer on the date he retires. Thus, persons with long years of service must continue to work within the industry until normal retirement or lose pension benefits. Yet, one who becomes a current employee near the end of his career may well be eligible for substantial benefits. If current proposal with respect to vesting becomes law, additional financial burdens will be placed on the Central States Pension Fund. Thus, the trustees cannot be faulted for giving a restrictive interpretation to the phrase "Teamster industry," as long as they do so consistently. For recent comments on vesting, see 82 L.R.R. 46 (January 15, 1973); 80 L.R.R. 183 (July 3, 1972); 80 L.R.R. 67 (May 22, 1972); Address by Senator Javits, prepared for delivery at the New York Conference on Labor, April 17–19, 1967, 1967 Labor Relations Yearbook, 229; Address by Stanley S. Surrey, Assistant Secretary of the Treasury, American Pension Conference, May 11, 1967, 1967 Labor Relations Yearbook, 41.