**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, and its Local Union No. 174, Plaintiffs,**

v.

**ANACONDA AMERICAN BRASS COMPANY, Inc., Defendant.**

Civ. A. No. 37289.

United States District Court,
E. D. Michigan, S. D.

March 17, 1972.

John A. Fillion, Merrill Jay Whitman, Detroit, Mich., for plaintiffs.

Thomas E. Coulter, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and Local 174 bring this action for breach of a pension plan agreement against Anaconda American Brass Company, Inc., under Section 301 of the Labor-Management Relations Act, 29 U.S. C. § 185. This court has jurisdiction of this dispute.

The suit involves the interpretation of Section 2.4 of a pension plan agreement [1] dated September 8, 1960, as amended January 7, 1964. This provision states:

"On or after May 1, 1968, an Employee under age 65 who shall either have been laid off because of a permanent shutdown of any operation, department or subdivision thereof, or in any event shall have been laid off for a continuous period of 6 months or more may elect to retire after such date and receive a '75/80' pension if (a) the Employee has reached his 55th birthday as of the date of layoff, his age plus his Continuous Service as of the date of layoff totals 75 years or more, or (b) the Employee has not reached his 55th birthday as of the date of layoff, his age plus his years of Continuous Service as of the date of layoff totals 80 years or more; provided however, that the act of layoff must have occured on or after May 1, 1966."

On August 30, 1971, Anaconda shut down two departments of its Detroit plant permanently. Thirty-two (32) individuals affected by the permanent shutdown fulfilled the age and service qualifications for the 75/80 pension provision and requested that they be admitted to early retirement. The company refused, saying the provision did not apply to these employees. They then, by reason of their seniority, "bumped" other men in the plant under protest. The union filed a protest, and this lawsuit ensued.

Interestingly, another group who had sufficient age and service to qualify for the plan but who had insufficient seniority to "bump" were admitted to a 75/80 pension.

The suit is also brought on behalf of some twenty-eight (28) employees who, plaintiffs claim, were wrongfully laid off. These twenty-eight (28) men were laid off because they were "bumped" by the thirty-two (32) men, aforesaid, who had desired early retirement.

The UAW moves for summary judgment as to the issue of liability. Both parties [2] agree that summary judgment is appropriate, since as to this issue there are no material facts in dispute.

Anaconda makes four contentions:

1. Since the "32" employees elected to bump rather than leave their employment, they waived any rights under the agreement;

2. The "32" employees were not "laid off" within the meaning of Section 2.4, since they never actually left their employ in the company;

3. An employee who elected layoff would not qualify for the pension, since Section 2.4 specifies that the pension is available only to those employees who go on layoff "by reason of a permanent shutdown." If an employee elects not to

---

1. Pension plan for production and maintenance employees and certain plant protection employees of Anaconda American Brass Company, Inc.

bump and goes instead on layoff, the cause of the layoff is due to the employee's election, not the employer's shutdown; and

4. An employee who elects layoff is no longer an employee. In the case of an employee who elects layoff, the right of recall is to that department only. If as is the case here, there is a permanent shutdown, there can be no recall since that department is permanently closed. The employee has lost all rights to future employment and is therefore a quit.

Anaconda, at oral argument, now concedes that as to points 1 and 2 the employees had bumped under protest, specifically reserving rights under the pension plan, and as to "layoffs," that the employees were laid off as that term is defined in the collective bargaining agreement. According to that agreement, an employee may either accept layoff or bump another employee. (Article VI, Section 2(a), of the collective bargaining agreement.)

The UAW argues that Section 2.4 of the pension plan is designed for exactly this sort of situation. It claims that the objective of the clause is reached when there is a permanent shutdown and consequent reduction of work force and that at that point the senior employee may elect retirement under this pension plan. Result: Junior employees are not bumped, "the 28" and those employees retain their positions while the older employees retire.

The court is persuaded that this interpretation of Section 2.4 is correct. Although the section does not specifically say that an employee may either bump or retire, it is a fair inference. The section states that the employee may *elect*. This implies a choice. Under Anaconda's interpretation an employee has no choice —he must either bump if he has seniority or become a quit. The company's interpretation would deny any real meaning to the word "elect."

The contention that a person who goes on layoff (rather than to "bump") in this situation and thus loses all his rights as an employee, is not reasonable, if this is so, it might be argued that no employee who retires would ever be eligible for any pension or retirement fund.

As to Anaconda's causation argument and its point that the employee's decision to bump or to go on layoff is later in time than the company's decision to shut down and thus is the proximate cause does not alter the fact that the employee was forced into this position as a direct result of the company shutdown. It is the company's decision that is the legal cause.

Finally, Anaconda points to a similar pension clause between the Steelworkers' union and United States Steel Corporation. When compared to Section 2.4, it is a model of clarity. Anaconda deals primarily with the Steelworkers, and the UAW and the Steelworkers bargain jointly with Anaconda. Anaconda argues that if the instant clause was intended to have the same effect as that agreed to by United States Steel and the Steelworkers, the same language would have been utilized. Although the contract language here is not quite as clear, the "32" employees should not be penalized for draftsmanship when the plain meaning can be determined. In United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, at p. 580, 80 S. Ct. 1347, at p. 1352, 4 L.Ed.2d 1409 (1960), the Court, quoting Dean Shulman, says, " . . . the products of negotiation (the written document) is . . . a compilation of diverse provisions . . . . Some provide more or less specific standards which require reason and judgment in their application. . . ."

For the above reasons, summary judgment is granted in favor of the plaintiffs as to the "32" employees. No findings of fact are necessary and this Memorandum Opinion contains the requisite conclusions of law in accordance with the rules.

Issues of fact remain as to the claims of some of the "28" employees who were

laid off and as to damages. As to these points, counsel are directed to confer with this court's clerk to agree upon a suitable date for a conference in chambers where these matters may be discussed.

An appropriate order may be presented.