475 F.2d 682
 82 L.R.R.M. (BNA) 3033, 70 Lab.Cas. P 13,536
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW)
and its Local 174, Plaintiff-Appellees,
v.
ANACONDA AMERICAN BRASS COMPANY, Defendant-Appellant.
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW)
and its Local 174, Plaintiffs-Cross-Appellants,
v.
ANACONDA AMERICAN BRASS COMPANY, Defendant-Cross-Appellee.
 Nos. 72-1818, 72-1819.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 5, 1973.
Decided March 28, 1973.
 
 Timothy D. Wittlinger, Detroit, Mich., for appellant; Thomas E. Coulter, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., on brief.
 M. Jay Whitman, Detroit, Mich., for appellees; Stephen I. Schlossberg, John A. Fillion, Detroit, Mich., on brief.
 Before PHILLIPS, Chief Judge, and PECK and MILLER, Circuit Judges.
 PHILLIPS, Chief Judge.
 
 
 1
 This litigation under Sec. 301 of the Labor-Management Relations Act[1] arose out of the permanent shutdown of two departments of the Anaconda Brass Co., Inc., at Detroit on August 30, 1971. Anaconda had a pension plan agreement which had been executed in addition to its collective bargaining agreement with the appellee labor union.[2]
 
 
 2
 The pension plan agreement provided that any employee under age 65 who shall have been "laid off because of a permanent shutdown of any operation, department or subdivision thereof . . . may elect to retire . . . and receive a ' 75/80' pension" if the employee had reached his 55th birthday with a stipulated minimum of continuous service with the company. The agreement also provides for " 75/80" pension benefits to certain employees under 55 years of age with a stipulated minimum of continuous service. The text of the language in controversy is quoted in the opinion of District Judge John Feikens reported at 340 F.Supp. 651. His findings of facts and conclusions of law are made an appendix to this opinion. Reference is made to the reported opinion of the District Judge and to his findings of fact and conclusions of law (appendix hereto), for a more complete recitation of facts.
 
 
 3
 Thirty-two employees affected by the permanent shutdown met the qualifications for the 75/80 pension and requested early retirement. The company contended that they could not retire under the early retirement plan, and had only two choices: (1) to quit; or (2) to use their seniority to "bump" other employees with less seniority in other departments which had not been shut down. Faced with these alternatives, the thirty-two employees "bumped" other employees under protest, and this litigation followed. Also involved in the suit are the rights of a number of other employees affected by the shutdown, in addition to the thirty-two employees referred to above. Reference is made to the reported opinion and findings of the District Court (Appendix hereto) for details.
 
 
 4
 Judge Feikens decided practically all issues in favor of the Union. He held that the thirty-two employees had the right to elect early retirement; that "bumped" employees who are now retired on the " 75/80" plan may elect to return to work or remain retired under the plan; and that employees "bumped" out of a job have a right to reinstatement with back pay. The company appeals. The Union cross-appeals on two issues: (1) the basis of computation of the pensions of the thirty-two employees found entitled to retire; and (2) the basis of computation of back pay of employees whose jobs are to be restored.
 
 
 5
 We agree with the Union on the first ground of its cross appeal and modify the judgment of the District Court accordingly. In all other respects we affirm the judgment of the District Court.
 
 
 6
 Anaconda contends that the interpretation of the pension plan by the District Court is contrary to the interpretation which the parties have placed upon the disputed language. It is asserted that "there never has been a situation in Detroit, or even corporate-wide, of an employee being granted 75/80 pension benefits in a situation where he could bump, but refused to do so." This assertion is supported by an affidavit. However, the record also contains the following letter written to the District Judge:
 
 
 7
 "Hon. John Feikens March 8, 1972
 
 Judge, U. S. District Court
 Eastern District
 851 Federal Building
 Detroit, Michigan 48226
 
 8
 Re: United Automobile Workers v.
 
 Anaconda American Brass Company
 Federal District Court
 Eastern District of Michigan
 Southern Division
 Civil Action No. 37289
 
 9
 "Dear Sir:
 
 
 10
 "At the hearing on the Motion for Summary Judgment in the above matter, held on Monday, March 6, 1972, you requested that I check with the several Divisions of the Defendant to determine if there had existed a situation involving the permanent closing of a department which was similar to the factual situation in the issue being litigated.
 
 
 11
 "Such a check has been made, and I will inform you that we have been unable to determine the existence of any such similar incident."
 
 
 12
 Anaconda further contends that at a negotiating session prior to the institution of this litigation, the Union requested a change in the language of the pension plan to make employees in the situation herein involved eligible for 75/80 pensions. We hold that this effort by the Union to effect a clarification of the disputed language is not a waiver of its position as to the meaning of the language in dispute.
 
 
 13
 All other contentions of Anaconda have been considered and found to be without merit.
 
 
 14
 We now come to the cross appeal of the Union.
 
 
 15
 The Union's first contention is directed to the effective date as of which the 75/80 pension benefits for the thirty-two employees in question is to be calculated. In finding of fact No. 7 (Appendix hereto), the District Court held that "the pension rate which such employees receive will be the rate in effect on August 27, 1971." The Union contends that the applicable pension rate should be that in effect on the date of their actual retirement. We agree with the Union. The judgment of the District Court is modified accordingly.
 
 
 16
 The Union further contends that the rate of backpay set forth in finding of fact No. 9 (Appendix hereto) should include a "reasonable estimate of incentive pay, overtime pay and other negotiated premiums." We disagree and affirm finding of fact No. 9.
 
 
 17
 Modified and affirmed. Costs are taxed against Anaconda.
 
 APPENDIX
 
 18
 OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW
 
 
 19
 U. S. District Court-Eastern District of Michigan-(Southern Division)
 
 
 20
 This opinion supplements the Memorandum Opinion issued by this Court on March 17, 1972, and disposes of all issues raised by the pleadings. It also sets forth Findings of Fact and Conclusions of Law as required by Rule 56 and is a final order of Summary Judgment.
 
 
 21
 As noted in this Court's Memorandum Opinion issued on March 17, 1972, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and Local 174 brings this action against Anaconda American Brass Company, Inc., under Section 301 of the Labor-Management Relations Act, 29 U.S.C. Sec. 185, and this Court has jurisdiction under that section to determine liability and to award actual and consequential damages and other appropriate relief in this dispute.
 
 
 22
 The original Memorandum Opinion sets forth the undisputed facts leading to this litigation. It is to be noted that the parties have negotiated amendments to said pension plan since the date of the departmental shutdown, granting increased 75/80 pension benefits to all such pensioners, but smaller increases to those employees who retired under the provision prior to October 1, 1971.
 
 
 23
 For purposes of clarification, the following definitions are used:
 
 
 24
 Group I A-Employees in shutdown departments presently working in other departments and who Union claims should have been given an election to take 75/80 pensions.
 
 
 25
 Group I B-Employees still working whose jobs were amalgamated or job descriptions changed (primarily skilled trades).
 
 
 26
 Group II-Employees laid off and presently collecting 75/80 pensions.
 
 
 27
 Group III-Employees laid off.
 
 
 28
 Group IV-Employees laid off but later recalled to work.
 
 
 29
 No facts being in dispute, this Court finds the facts to be as outlined in its original Memorandum opinion.
 
 Conclusions of Law
 
 30
 1. Group I-A employees are entitled to elect to retire and receive 75/80 pensions.
 
 
 31
 2. Group I-B employees are not entitled to elect to retire and receive 75/80 pensions.
 
 
 32
 3. Employees who did not sign the protest forming the basis of this lawsuit cannot now protest and be entitled to an election with Group I-A employees for 75/80 pensions.
 
 
 33
 4. Deceased employees have no further rights under the contract or pension agreement and will not be considered. Sick employees in Group I-A have an election now to retire on 75/80 pensions upon termination of sick leave or have a job available on return from sick leave (seniority permitting). Employees retired on 60/30 pensions must remain on those pensions and will not be given an election to return to work.
 
 
 34
 5. If any jobs are open due to Group I-A employees electing 75/80 pensions, then Group II and Group III employees will be called in (in seniority order from a combined seniority list of Group II and Group III) to fill said jobs. If any employees in Group II presently on 75/80 pensions, elect not to return to work, they will remain on said pensions.
 
 
 35
 6. The three Plate Mill employees, in Group II, who were bumped by Group I employees and who retired on 75/80 pensions, may, if reached in any recall procedure, elect either to return to work or to continue to receive 75/80 pension benefits if they do not elect to return to work.
 
 
 36
 7. Employees in Group I-A who elect to retire, will be deemed to have retired, for purposes of Section 2.4 of the Pension Plan, on August 27, 1971. Such employees will receive said 75/80 pension benefits on the first day of the month next following the month in which they actually terminate active employment with the company. The pension rate which such employees receive will be the rate in effect on August 27, 1971, provided that such employees shall also be entitled to receive any increases negotiated subsequent to such date, which are applicable to employees retiring on such date.
 
 
 37
 8. Jobs will be filled in accordance with established past practice, based on the determination of the Company as to the open job for which the returning employee is most qualified. There shall be no preference of job assignments by reason of seniority. If any employee is refused a job solely because of physical infirmity based on a report from the Company clinic, and said employee obtains a letter from his doctor stating that the employee is physically capable of performing the job, the question of employee's physical competence shall be submitted to an impartial medical arbitrator appointed by the Company clinic and the employee's doctor. Expenses of the independent physician shall be shared equally by the Company and the Union.
 
 
 38
 9. Employees in Group II, presently receiving 75/80 pensions, will not be entitled to any back pay if they elect to return to work. Employees in Group III eligible to receive back pay pursuant to paragraphs 5 and 12 hereof, will receive back pay at the average base rate of all jobs which Group I-A employees leave or which become available due to the retirement of Group I-A employees, and which are not filled by returning Group II employees. It is the order of this Court that such back pay be determined by 40 hours straight time, excluding any incentive pay, overtime or other premium, for each week laid off, provided that any increase in the applicable base rate occurring subsequent to August 27, 1971 shall be included in the computation of such damages, such increase being effective for the purposes of computing damages on the date it becomes effective as to all employees in the bargaining unit. Subtracted from this amount will be all outside earnings, Workmen's Compensation, unemployment compensation and sick and accident benefits actually received by that employee eligible to receive back pay. If the State of Michigan recovers unemployment compensation or makes a demand on any employee for repayment thereof, the Company shall reimburse the employee for all such sums collected or pay the employee all sums for which demand for repayment has been made. Such payments shall occur within two (2) weeks after the Company has received notice from the employee that such recovery has occurred or that such demand has been made. The Company may require the employee to submit reasonable proof of such recovery or such demand.
 
 
 39
 10. Employees in Group III returning to jobs after having been laid off will be credited with service for the entire period of their absence both for purposes of pension and for purposes of all other contractual benefits including but not limited to vacation benefits. Regarding vacation benefits, said employees will receive their guaranteed vacation benefits in the calendar year in which they return to work. Such employees will retain their established seniority date. Employees in Group II returning to jobs after having been pensioned will be credited with service for the entire period of their absence for purposes of pension benefits, but for no other purposes. Said employees will retain their established seniority date.
 
 
 40
 11. Only those jobs still remaining on the date that all appeals from this order are exhausted are to be considered. No employees have recall rights or back pay rights to jobs eliminated after September 1, 1971 and before the date that all appeals from this order are exhausted.
 
 
 41
 12. This is a final order determining the rights of all parties on the question of liability. Defendant may have a stay of execution during exhaustion of all appeals. After said exhaustion of appeals, Group I-A employees shall be given 48 hours to elect to receive a 75/80 pension or to continue working. If no election is made, the employee will be deemed to have elected to remain working. All vacant jobs will be posted within the plant pursuant to the Collective Bargaining Contract and remaining working employees shall have 48 hours to bid on these jobs. Registered letters, return receipt requested, shall be sent to the senior people in Group II and Group III for filling vacancies created. Said employees shall have five working days to respond to said letters and if no response is received, the employee shall be deemed to have elected to not return to work. If such an employee contacts the Company and expresses his intention to return to work, but indicates that it is impossible for him to report to the Company within the five day period, he shall be given a reasonable period of time within which to report. His failure to report within this extended time shall be deemed to be a waiver of his right to return. As soon as an election is made by any of these employees not to return to work, other registered letters will be sent out to the next senior employees in Group II and Group III and the above same procedure will be followed. Returning employees will be trained and placed as fast as possible, and employees in Group I electing to receive pensions will be retired as soon as their job has been filled with a trained man, but in no case later than the first day of the third month following the exhaustion of all appeals. If there are no jobs which a returning employee can perform, that employee must remain on layoff or pension, subject to the stipulated provisions regarding physical infirmity and disability set forth in the physical infirmity and disability provision of paragraph 5.
 
 
 42
 The Findings of Fact and Conclusions of Law of this Court on issues numbered 2, 3, 4, 5, 8, 11 and 12 are wholly based on the stipulation which the parties have made as to those issues to facilitate this litigation, and this Court, therefore, incorporates the same herein.
 
 
 43
 Wherefore, it is ordered by this Court that:
 
 
 44
 1. The parties shall comply with the provisions of paragraphs 1-12 of this opinion.
 
 
 45
 2. The Defendant shall pay damages to Plaintiff in the amount to be determined under the provisions of Paragraph 9.
 
 
 46
 3. The Defendant shall pay Plaintiff's costs, but not attorney fees.
 
 
 47
 4. The Defendant shall have a stay of execution of this order pending exhaustion of all appeals, as provided in Paragraph 12 hereof.
 
 
 48
 /s/ John Feikens
 
 United States District Judge
 
 49
 Dated: June 9, 1972.
 
 
 
 [1]
 29 U.S.C. Sec. 185
 
 
 [2]
 The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and Local 174