**UNITED BRICK AND CLAY WORKERS OF AMERICA, AFL–CIO, and Michael J. Farrel, Coleman McKay, Melvin McKay, Fred Nation, Charles E. Patterson and Russell Potter, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**INTERNATIONAL UNION OF DISTRICT 50, UNITED MINE WORKERS OF AMERICA and Alton Brick Company, a Corporation, Defendants.**

No. 69 C 450(2).

United States District Court,
E. D. Missouri, E. D.

June 22, 1970.

■

Schuchat, Cook & Werner, St. Louis, Mo., for plaintiffs.

Lewis, Rice, Tucker, Allen, & Chubb, St. Louis, Mo., for defendant Alton Brick Co.

Val Terschluse, St. Louis, Mo., for defendant International Union of District 50, United Mine Workers of America.

## MEMORANDUM

MEREDITH, District Judge.

This matter is before the Court on motions for summary judgment by the plaintiff United Brick and Clay Workers of America, AFL–CIO, and defendant United Mine Workers of America. The plaintiffs are the United Brick and Clay Workers of America AFL–CIO, a labor organization within the meaning of section 2(5) of the National Labor Relations Act, and Michael J. Farrel, Coleman McKay, Melvin McKay, Fred Nation, Charles E. Patterson, and Russell Potter, employees of the Alton Brick Company, who bring this action on behalf of themselves and others similarly situated. The defendants are the International Union of District 50, United Mine Workers of America, a labor organization within the meaning of section 2(5) of the Act, and the Alton Brick Company, a corporation authorized to do business and with its principal place of business in Missouri, and an employer within the meaning of section 2(2) of the Act. This Court has jurisdiction under 29 U.S.C. § 185.

From April 1963 the defendant District 50 was the certified exclusive bargaining representative of the bargaining unit composed of all the production and maintenance workers of the defendant Alton Brick Company. Collective bargaining agreements were executed by District 50 and Alton Brick in July 1963 and April 1966, the latter to expire on April 30, 1969. On February 10, 1969, the Brick and Clay Workers filed a representation petition with the National Labor Relations Board. On March 25, 1969, the Board conducted a representation election in which a majority of the employees of the bargaining unit at Alton Brick voted to be represented by the Brick and Clay Workers. The Board certified the results on April 8, 1969.

The contracts executed between District 50 and Alton Brick in 1963 and

1966 contained the following identical provisions:

## "ARTICLE XII PENSION PLAN

Beginning May 1, 1964, the Company agrees to inaugurate a pension plan which shall provide that the Company pay the sum of five cents (5¢) per hour for each regular employee employed, said sum not to be less than nor more than $2.00 in any one week in which the employee works, said pension trust and plan to be mutually agreed upon between the Company and the Union and have the approval of the Internal Revenue Service; the same to be administered by Trustees, an equal number to be designated by the Union and the Employer. That on May 1, 1965, the Company agrees to pay the sum of ten cents (10¢) per hour for each regular employee employed to said pension plan, said sum not to be less than nor more than $4.-00 per week, which amount shall be frozen for a period of five (5) years from the effective date of the pension plan, May 1, 1964. That, at the time of the creation of this Pension Trust and Pension Plan it shall be compulsory for an employee to retire at age 65 and also employees shall have the right to retire at age 62 years, provided they comply with all the terms of the Pension Trust and Pension Plan as the same may be approved by the Department of Internal Revenue Service. The company shall not be required to make weekly payments to the Pension Plan for those employees that are on layoff or for any week in which an employee does not work except where an employee is on vacation and when an employee is off work due to a compensable injury."

On August 13, 1964, Alton Brick and District 50 executed a Pension Agreement pursuant to the above-quoted provision of the collective bargaining agreement, which provides in part:

## ARTICLE VI

"*Section 9.* This Agreement shall become effective May 1, 1964, and shall continue in effect until April 30, 1966, and shall automatically continue thereafter during annual periods of one (1) year each, unless either party notifies the other in writing not less than sixty (60) days prior to an annual expiration date that a discontinuance or modification is desired. In the event of such notification, negotiations between the parties shall begin within fifteen (15) days following such notification. If pursuant to such negotiations an agreement, renewal or modification is not reached prior to the current expiration date, this Agreement shall continue in force for an additional thirty (30) days unless it is extended for a further period by mutual agreement of the parties."

On that same date, the defendants and the National Bank of Washington entered into a Trust Agreement whereby the National Bank was to serve as Trustee of the Pension Fund, effective May 1, 1964. Articles XI and XII of the agreement, relating to termination of the agreement, provide as follows:

## "ARTICLE XI

"Upon the termination of the Pension Agreement, the Trustee after notice from the Company and the Union shall liquidate the assets of the Pension Fund and deposit the proceeds thereof as part of the cash reserve in Trust to be disbursed as provided in said Pension Agreement. In no event shall any part of the principal or income of the Pension Fund be paid to or for the use or benefit of the Company."

## "ARTICLE XII

"This Trust agreement shall be construed in conjunction with the Wage Agreement and the said Pension Agreement and the rights of all parties hereunder shall be subject to the terms and provisions of said Agreements."

The agreement was amended on June 27, 1968, among other things, by changing the Trustee to the National Savings

and Trust Company, and by amending Article XI as follows:

## "ARTICLE XI

"Upon the termination of the Pension Agreement, the Trustee after notice from the Company and the Union shall liquidate the assets of the Pension Fund and deposit the proceeds thereof as part of the cash reserve in trust to be disbursed as provided in said Pension Agreement. In no event shall any part of the principal or income of the Pension Fund be paid to or for the use or benefit of the Company.

"In the event of termination or upon complete discontinuance of contributions under the plan, the rights of all participants to benefits accrued to the date of such termination or discontinuance, to the extent then funded, are non-forfeitable."

On May 2, 1969, after the certification of the plaintiff Brick and Clay Workers, the defendants executed a document under and pursuant to the provisions of the Pension Plan and Trust Agreement, calling upon the Trustee to terminate the Trust, liquidate the assets of the said Pension Fund and to deposit the proceeds as a part of the cash reserve in trust, subject to the further instructions of the Pension Committee by and with the approval of the Alton Brick Company and District 50 as provided in the said Pension and Trust Agreements.

The National Savings and Trust Company liquidated the assets of the pension fund and is awaiting further instructions as to the disposition of these funds. The fund contains about $76,-300.00. Under the instructions submitted by Alton Brick and District 50, the funds are to be used to purchase annuities for those employees who had already retired on April 30, 1969, and for those employees who had vested rights in the fund under the terms of the agreement.

On July 31, 1969, the Brick and Clay Workers formally notified District 50 that it wished to continue the pension plan in effect, and requested that District 50 join with the employer in executing the documents necessary to designate the Brick and Clay Workers as the substitute and successor party to District 50 under the Pension Agreement and the Trust Agreement. District 50 refused and has continued to refuse to sign the necessary documents to designate the Brick and Clay Workers as its substitute and successor, has refused to recognize that the Brick and Clay Workers succeeded to its rights to administer the Pension Plan, and has continued to take the position that the pension plan is terminated. Defendant Alton Brick Company takes no position as to whether or not the pension plan should be reformed.

This action was filed on December 22, 1969. The plaintiff alleges that termination of the pension plan and liquidation of the funds will result in loss of pension benefits to the employees of Alton Brick Company. Employees under age fifty-five will lose everything and receive nothing and benefits for those over fifty-five will be greatly reduced. The plaintiff asks this Court to declare the termination of May 2, 1969, void; to declare that plaintiff union has succeeded as the party in interest to all the rights of District 50 under the Pension Agreement and Trust Agreement; and to reform the Pension Agreement and Trust Agreement substituting the Brick and Clay Workers for District 50.

The defendants do not dispute the allegation that the pension fund will have its long range value to the workers diminished by conversion of the fund into annuities at the present time. District 50 offers no justification for its action other than that the defendants could terminate under the contracts if their bargaining relationship had continued. The greatest hardship is worked upon those employees who did not have vested rights at the time of termination. District 50 argues that those who did not have vested rights at the time of termination have no actionable interest in the fund. No class of employees will be benefited by this termination. It would

seem undeniable that employees for whom contributions to the fund had been made and who are certain to become vested as soon as they meet certain age and length of employment conditions have an interest in preventing needless dissipation of the trust fund.

The chronology of events is important. The Brick and Clay Workers became the certified bargaining representative on April 8, 1969. The contract between District 50 and Alton Brick expired, by its own terms, on April 30, 1969. On May 2, 1969, District 50 and Alton Brick terminated the pension plan. They did not follow the contractual termination procedure. Subsequent to these events, two things occurred: Alton Brick and the plaintiff negotiated a pension agreement that calls for the same contributions by the company as the contract between the company and District 50; the plaintiff requested that District 50 cooperate in substituting plaintiff in the pension plan, District 50 refused. It is the opinion of the Court that in so refusing, District 50 acted in bad faith and when it was without power to act because all its contractual relationships with Alton Brick had ended and it was no longer the certified bargaining representative. The pension fund was created for the benefit of all the members of the bargaining unit, regardless of union affiliation, and not for the benefit of District 50. Therefore, the Court will reform the contract between Alton Brick and District 50 by substituting the exclusive certified bargaining representative of the members of the bargaining unit, the Brick and Clay Workers, for District 50 in the Pension Agreement, Pension Plan, and Trust Agreement. The Pension Plan shall also be modified to provide for automatic substitution should any new bargaining agent for the employees so desire.

The Alton Brick Company and the plaintiff shall notify all the employees and ex-employees covered by the Pension Plan of the contents of this memorandum by mailing a copy of the same to such persons within 10 days from date.

If any person covered by the Pension Plan has any objection to entry of a final decree, he shall promptly notify the Court in writing as to his objection.

Plaintiff shall prepare the necessary judgment and submit it to the Court and the defendants within fifteen days from date. If the defendants have any objections to the form of the decree, they shall advise the Court within five days after receipt of the proposed decree.