**Thomas MEEHAN, Plaintiff,**

v.

**LABORERS PENSION FUND et al., Defendants.**

No. 75 C 2307.

United States District Court, N. D. Illinois, E. D.

May 24, 1976.

Patrick J. Reilly, Reilly & Sentman, Chicago, Ill., for plaintiff.

Arnold & Kadjan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

### I. Background

Thomas Meehan filed a two-count complaint on July 5, 1975 charging that, despite his compliance with all the prerequisites of entitlement to pension benefits as set out in the regulations of the Laborers Pension Fund, the fund rejected his claim for a normal pension. The fund's decision, which plaintiff appealed under the fund's internal appeal procedures and which was affirmed, was based on the finding that Meehan, although a member of Local 4, had been employed by the Standard Oil Company from 1937 through 1960 and the American Oil Company from 1961 through the first quarter of 1966 building filling stations and that such employment did not qualify as a pension credit.

In count II, Meehan charges the Laborer's Union International of North America (Union) with breaching its duty of fair representation by failing adequately to represent his position before the Board of Trustees of the fund. In addition, he alleges that the union president, Thomas Kelly, participated in the incorrect decision of the fund.

Plaintiff argues that the actions of the fund and the other defendants violate the terms of the collective bargaining agreement, which established the Pension Fund. Accordingly, he cites section 301 of the National Labor Relations Act, 29 U.S.C. § 185, as the jurisdictional basis for this suit.

The Pension Fund, Local 4, and James P. Kelly have moved to dismiss the complaint on the grounds that this Court lacks subject-matter jurisdiction under section 301; that the complaint fails to state a claim for relief; that, since a suit for breach of the duty of fair representation is derivative, the plaintiff's failure to allege a breach of the contract between the Union and the employer precludes such a suit against the Union; and that individual Union officials are not liable for alleged violations of a Union's duty of fair representation.

The plaintiff opposes these motions on the grounds that § 301 jurisdiction is proper, since he has alleged a violation of the collective bargaining agreement; that he has alleged entitlement to payments from the fund; and that the statement of a cause of action against the fund provides this Court with sufficient basis for jurisdiction over the Union and individual Union officials.

### II. Discussion

Section 301 provides:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) established the principle that individual employees may bring suit under § 301 to vindicate their rights arising from a collective bargaining agreement. See also *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Based on the policy underlying *Evening News Association,* which encourages an expansive rather than a narrow reading of § 301, courts have held that neither the employer nor the union, the parties to the collective bargaining agreement, are necessary parties in an action brought by a single employee against pension and retirement funds or the trustees thereof challenging the conduct of the fund. See *Alvares v. Erickson,* 514 F.2d 156 (9th Cir. 1975); *Brune v. Morse,* 339 F.Supp. 159, aff'd, 475 F.2d 858 (8th Cir. 1973); and *Hancock v. Pension Fund,* 84 LRRM 2635 (S.D.Ind.1973).

Plaintiff's complaint in the instant case, therefore, could establish jurisdiction under § 301 if it alleged some failure on the part of the fund and the trustees to carry out the provisions of the collective bargaining

agreement in the establishment or conduct of the fund. The cases clearly so hold. Because, however, it alleges only that the fund determined that he personally did not qualify for pension benefits and, therefore, denied plaintiff's claim and appeal of this determination, the complaint fails to make the jurisdictional showing. The challenged actions of the fund trustees involve only the day-to-day administration of the fund rather than matters of policy or abuse of discretion which could be interpreted as a breach of the collective bargaining agreement providing for the establishment of the fund.

Courts have consistently dismissed suits by individual employees under § 301 when the complaint did not allege the breach of an agreement between the employer and the union. In *Adams v. Budd Co.,* 349 F.2d 368 (3d Cir. 1965), the Third Circuit affirmed the dismissal of a suit brought by employees belonging to the United Auto Workers against the union and their employer. The complaint charged that the two defendants had conspired to deprive the plaintiffs of the super-seniority status they had acquired under their original contract by negotiating a new collective bargaining agreement which accorded such status only under certain circumstances and did not cover the plaintiffs. The Third Circuit's affirmance was on the ground that plaintiffs did not seek redress for the violation of a collective bargaining agreement. In *Mumford v. Glover,* 503 F.2d 878 (5th Cir. 1974), individual employees sued the union and the employer for extending a pension plan beyond June 30, 1972, the date before which, under the collective bargaining agreement, no renegotiation of the pension fund could occur. The plaintiffs were part of a group within the union favoring termination of the fund. The union appointed a bargaining committee to renegotiate the plan and plaintiffs filed suit to have the fund terminated. The district court dismissed the suit for failure to state a claim and the Fifth Circuit agreed that these allegations failed to state a cause of action for violation of the collective bargaining agreement, since the phrase "shall not be open to renegotiation until June 30,

1972" merely prohibited alteration before that date and did not require termination.

Courts have, however, found § 301 jurisdiction in cases where individual employees sued joint labor-management funds established for the welfare of employees. In *Alvares v. Erickson, supra,* members of a Seattle area local of the Plumbers and Pipefitters Union brought suit against the trustees of the Washington State Plumbing and Pipefitting Industry Health and Welfare Trust (State Welfare Trust), a joint labor-management trust organized under 29 U.S.C. § 186(c) and pursuant to statewide bargaining between unions and employers in the plumbing and pipefitting industry. The local to which plaintiffs belonged had withdrawn from the statewide bargaining unit and created a new and independent bargaining unit limited to the Seattle area. Pursuant to the withdrawal, the Seattle area local set up a Seattle Area Welfare Trust and, thereafter, demanded from the trustees of the State Welfare Trust a pro rata share of certain uncommitted reserves accumulated in the State Welfare Trust.

The Ninth Circuit found in *Alvares* that the three jurisdictional requisites of § 301 had been satisfied. First, a contract existed. Language in the collective bargaining agreement as well as the trust agreement provided that the latter should be considered a supplement to the former; the parties intended the trust agreement to be "part and parcel" of the collective bargaining agreement. Second, a breach of the agreement was alleged. Plaintiffs asserted that the state fund trustees' refusal to allocate a pro rata share of the reserves violated provisions of the trust agreement relating to eligibility and the implied duty of trustees not to adopt arbitrary and capricious eligibility rules. Third, the contract was between a union and an employer. The Court rejected the defendants' argument that the "between-ness" requirement goes to the suit rather than the contract by holding that such an interpretation would be inconsistent with *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), which encouraged

a broad rather than narrow reading of § 301.

The Ninth Circuit in *Alvares* also noted other cases involving disputes between an individual employee and a labor-management pension trust, where courts had accepted jurisdiction under § 301. See *Alvares, supra,* footnote 3. In a number of these cases involving disputes related to welfare and pension plans, the union, employer, or both, were parties to the suit. Most noteworthy regarding the cases cited in this footnote, however, is that they concerned fundamental questions relating to the existence or operation of the funds, such as an employer's failure to make required payments to the fund, employees' rights to the continued receipt of pension funds in the event of a plant closing, entitlement of laid-off workers to early retirement benefits under the pension agreement, actions against trustees for diversion of trust funds, and actions against employers for the arbitrary and capricious administration of employer-administered pension plans.

The instant complaint does not involve allegations of this nature. Plaintiff simply complains of the denial to him of pension benefits, even though he allegedly meets the qualifications for such benefits. The following excerpt from plaintiff's complaint is illustrative:

13. Under the provisions of Defendant Pension Funds Regulation, Plaintiff, THOMAS MEEHAN, is qualified for a full, normal pension under the terms of the bargaining agreement.

\* \* \* \* \* \*

The Plaintiff, THOMAS MEEHAN, has met the qualifications of Section II(a) by working in the construction industry since 1938 and, by accumulating 5½ hours of future credits for the periods after June 1, 1963. Plaintiff also complies with Section 2(b) of Article III in that there is a presumption that his work in the construction industry, prior to June 1, 1963, because he paid his union dues according to this section since 1929. Further, no proof was ever offered that he did any work other than that of a common laborer in the construction industry. Plaintiff further qualified under Section 3 of Article III according to exhibit "B". The Defendant Pension Fund, by a letter dated March 13, 1974, and attached as Exhibit "D" rejected the Plaintiff's claim for a normal pension under the Fund. Said rejection was based on the trustees decision, that although Plaintiff worked in the construction industry, and was required to pay union dues to maintain his job while building certain gas stations for Standard Oil, that said period of employment did not qualify him for pension credit. Rejection stated in pertinent part:

. . . The period 1937 through 1960, you were employed by Standard Oil Company and during the period 1961 through the first quarter of 1966 you were employed by the American Oil Company. Work you performed while an employee of the Standard Oil Company and the American Oil Company does not qualify as a pension credit . . . ."

14. The plaintiff took an appeal from the Board's decision which was denied by letter dated June 26, 1974, and attached as Exhibit "B".

These allegations clearly pertain solely to the day-to-day administration of the fund and would be properly aired in a state court action by plaintiff against the fund trustees to compel pension payments. In *Hancock v. Pension Fund, supra,* the court held that it had jurisdiction over plaintiff's suit challenging the provision of a retirement plan which was interpreted by the fund trustees to exclude all service beyond 20 years in computing benefits upon early retirement. Since plaintiff had 34 years of service when he took early retirement, he argued that the additional 14 years should also be included in the computation. The court held that plaintiff had failed to show that the fund's interpretation of the applicable provision was arbitrary and capricious. It also held, without discussion, that it had subject-matter jurisdiction under § 301. The instant case is distinguishable inasmuch as

plaintiff does not challenge the fund's interpretation of any provision of the trust. He merely asserts that the fund trustees reached the wrong determination in concluding that his employment by Standard Oil and American Oil did not qualify as covered employment.

In a similar case, *Beam v. International Organization of Masters, Mates, and Pilots*, 511 F.2d 975 (2d Cir. 1975), a deceased employee's widow brought suit challenging the jointly administered labor-management welfare fund's denial to her of accidental death benefits. The trustees denied the benefits based on the decedent's failure to qualify. The decedent's death had been precipitated by an accident but death resulted only because plaintiff previously had a problem of alcoholism, the effects of which combined with the accident to produce his death. The rules of the fund precluded the granting of benefits under those circumstances.

The district court expressed doubt as to the existence of jurisdiction under § 301 but decided the case because there was diversity jurisdiction. In discussing the question of jurisdiction, the Second Circuit said (page 978):

> Appellant argues that Section 301 [29 U.S.C. § 185] confers jurisdiction on the federal courts whenever a claim involving a labor management trust is involved. *Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) and subsequent lower court cases [footnote omitted] where jurisdiction was based on Section 301 all involve directly the collective bargaining agreement or machinery, and we must be hesitant about reading *Smith* as supportive of the proposition that Section 301 creates federal court jurisdiction each time a decision of Trustees involving the application of rules of a jointly-administered trust to an individual claim is challenged.

In *Beam*, as in the instant case, the plaintiff challenged the day-to-day administration of the fund, specifically, the trustees' application of the provisions and rules of the trust to the particular facts before them.

■ Our colleague, Judge Flaum, in *Carroll v. Laborers Pension Fund, et al.*, No. 75C2308 (N.D.Ill. February 12, 1976), a factually similar case, held:

> The court finds that the instant action concerns the regulation of the relationship between union and employee rather than an action concerning the federal labor policy. The issue raised is a contractual matter governed by local law and jurisdiction pursuant to 29 U.S.C. § 185 is not proper.

We agree that plaintiff here, as in *Carroll*, is asserting a simple breach of contract over which we do not have jurisdiction under § 301 but which is properly litigated in the state courts.

■ With respect to the allegations of the complaint charging the Union and its president with breach of a duty fairly to represent an employee because they failed to present witnesses and documents favorable to plaintiff's claim at the hearing before the Fund's trustees and failed to object to evidence which was unfavorable, it is well established that section 301 confers jurisdiction on federal courts only in connection with alleged violations of a collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Plaintiff's dispute here is not with an employer but with the trustees over their interpretation and application of the eligibility provisions of the Fund. Any claim of inadequate representation in the proceedings before the trustees is within the exclusive jurisdiction of the National Labor Relations Board and the courts have no jurisdiction.

We hold, therefore, that the plaintiff's complaint does not meet the requisites for federal jurisdiction under § 301. Accordingly, we dismiss the complaint without prejudice as to all defendants.

An appropriate order will enter.